The next matter, number 24-2018, Betzeida-Santos-Pagan v. Bayamon Medical Center. At this time, would counsel for the appellant please come to the podium and introduce herself on the record to begin. Good morning, your honors. May I please the court, Yesenia Martinez, counsel for plaintiff and appellant. Proceed. Do you want to reserve any time? Yes, your honor. May I please reserve three minutes for rebuttal? Okay, you may. Your honor, we request that the court vacate the judgment, reverse, and remand to at least conduct jurisdictional discovery to the extent there is any dispute or any deficiencies in the allegations in the second amendment complaint, which is the operative complaint. First I will address the Article III standing issues and requirements and then go into the diversity at subject matter jurisdiction under CAFA and as well as under the federal question jurisdiction under the Stored Communications Act. Under Article III standing, there are three requirements, an actual and concrete injury that is traceable to the defendant that could be redressable by the court. Here the district court found that there was an actual injury. The plaintiff did suffer actual fraud in that she found a fraudulent cell phone account opened in her name for which she had to spend hundreds of dollars to repair her credit score. The district court found that the issue of redressability was not a factor because there would be adequate remedies at law to address the injury. What the district court found was lacking was whether the injury was fairly traceable to the defendant. Here we believe that the actual injury was fairly traceable to the defendant because the information that plaintiff provided in exchange for medical services to the medical center was precisely the type of information that is needed to open a fraudulent account. It included her name, her address, financial information, as well as her social security number. Counselor, let me ask you, this was dismissed at the 12B6 stage, correct? 12B1, at the pleading stage. But it's similar. My question is, isn't there sufficient pleading in what you pleaded, at least for this stage? Again, for summary judgment, there may be no issue of fact and your case is dismissed, but isn't there sufficient pleading here? That is precisely the plaintiff's position, that there are plausible allegations at this stage, but to the extent your honors determine that further specifics are needed in the operative complaint, plaintiff can still provide, if allowed to amend. Let me ask you this. If I look at the complaint, I think that the important language for that cell phone fraud is after Santa's Pagan received the breach notice on July 19th, 2019, she discovered an unknown cell phone account in her name. So as I read that, I think the problem there is the connection between the two events when there's no timing noted. With that sentence, I think the fraudulent cell phone account could have occurred even before the breach. Santa's Pagan doesn't note it. That's not noted in the complaint. And if it's after, there's no timing. So I understand you have the existence of a breach with some confidential information that we can assume was let out. And then you have a fraudulent cell phone account, but we don't know when that happened and the complaint never notes that. What are we to do with that? Sure. So your honor, there are, at the very least, it provides the court with information that further information could be alleged and amended if allowed to amend. But specifically the data breach notice that the medical center sent to plaintiff and putative class members did not mention when the data breach actually happened. The data breach notice just says that the data breach was discovered by the medical center in May, 2019. It's entirely possible that cyber criminals access the systems before May, 2019. But what we need is a connection between those, the two events, the breach, and then the thing that happened to your client where she suffered harm, which I think you would say is the fraudulent cell phone account. Sure. Your honor. And under web versus injured workers pharmacy, there is a link, there is a connection between the two events. One, the data breach and the finding of the actual, or the discovery of the actual fraud. And again, if allowed upon amendment, plaintiff could specify the specific date that she discovered the fraudulent account. And that will be an issue that will be subject to further discovery and cross-examination and potentially for briefing in summary judgment. Why wasn't the complaint then amended earlier? If you had that information. The complaint was amended to allege the discovery of actual fraud, but that doesn't, the allegations now we believe are plausible enough. They conform to the short and plain statement that is required under rule eight. Can I just go back to your, as I understand you, your argument, it is that the temporal connection in this case is the same as it is in web. But in web, we knew more about the connection between the breach. And I think there, it was a fraudulent tax return that was filed all within a year of that breach. How is that the same as the complaint here? In the first circuit in web, the court did not set a specific timeframe to hold that there is a connection, but web is used to illustrate that there could, what would be the purpose, and we cite to this in our briefs, that the six and seven circuits have found in Galleria versus Nationwide, and Remijes versus Neiman Marcus, and as well as the P.F. Chang's case, that why would cyber criminals take the information, take this valuable information, if not to use it? It's not a question of if the information is going to be used. The question is when. This information is valuable, not only because the cyber criminals take, use it for ransom from the data breach victim, but they also are selling it to the highest bidder. They know that this information, they could sell it to multiple people once it leaves the hands of the authorized recipient. It is publicly available. Plaintiff and class members can't call that back. You can't un-ring that bell. It's out there. There are no cases that say data breach occurs, your information is caught up in that. That is enough to establish plausibility, right? That's not what these cases say, or am I wrong? Can you direct me to some that say that? Well, Your Honor, the case is focused on the type of injury, right? So here we are focusing on the actual fraud that has happened, but that is not the only injury that is alleged in the complaint. We also allege the heightened risk of harm, which is also what the web court discussed. That as soon as one instance of use of the information, it makes it more likely that the information will be used, that the imminent risk of harm rises and is subject to ... And the medical center acknowledges this as part of its- I think you also established harm responding to the breach. Correct. In the time and resources spent responding to the data breach, and that is acknowledged by the medical center's data breach notice that says, we recommend that you obtain credit monitoring services and to pull your credit reports once every year to monitor for any instance of actual fraud. So the medical center has acknowledged that this information could be used for time immemorial, months or even longer past the date of the actual data breach. So turning now to, unless the court has any further questions on Article 3 standing, I'm going to turn to the subject matter jurisdiction under CAFA and the Stored Communications Act. First, under CAFA, the defendant conceded numerosity over half a million patients were affected in the data breach or whose information was compromised in the data breach. The question of- Switching off CAFA, why is the medical center a provider under the SCA? So the medical center is an electronic communication service under the SCA under 18 U.S.C. 2702 because it is a service, it provides medical services to users, patients like plaintiff and consumers, that provides the users here, patients and plaintiff, the ability to send and receive communications. Here the- What's your best case for that premise? For the premise, there are cases that we cite in the brief, specifically what comes to mind is Canop versus Hawaiian Airlines. It's a case from the Ninth Circuit that the SCA is meant to be interpreted broadly, keeping in mind the modern age and the idea that the protection of electronic information that is dispersed. But the idea is that the defendant provides in the definition of an electronic communication service, an ECS, is an 18 U.S.C. 2510 subsection 15. I mean, so your position boils down to any entity that uses an electronic system is by definition a provider. I mean, that's very broad as opposed to the, you know, there's specific IT entities that host and provide these storage services, which are clearly applicable to the statute. But you're saying that anyone who uses this electronic service thereby becomes liable under this. And so what is your best argument that the statute was intended to be that broad? We do not, we, our position is that the statute is meant to be interpreted broadly, but it's context specific as to how the tool or the communication, the servicer is using the electronic communications. It is not by any means our position that any user, any service that uses electronic communications that has servers falls within the scope of the Stored Communications Act. How do you narrow it? Pardon me? What's your narrowing factor? The narrowing factor is the definition of an electronic communications provider. It's a service that provides to members of the public, users, the ability to send and receive communications based on the actual service provided. And here at the medical center, not only uses a website, but it also has an electronic through an app, a patient portal through which patients can communicate directly with their physician and the nursing staff to seek through secure messaging, telehealth services during the pandemic. You know, if you had a routine healthcare related issue and did not want to trouble the hospital system, it was not emergent enough, you could use the patient portal to obtain telehealth services. And that is exactly what we are saying here. The electronic communications are not just a tool to process or provide the service. It is the exact way that the service is provided. And that is what the Stored Communications Act is meant to come within its scope. But the court may not decide that issue now. If there are issues or set a hard line rule as to what is a covered entity. We are at the pleading stage. Plaintiff has not yet had an opportunity to cure any deficiencies pertaining to the allegations under the Stored Communications Act. The court dismissed the Stored Communications Act claim with prejudice, but if given the opportunity of the court remands to amend it to seek jurisdictional discovery, we could amend to allege specific information. Further, I would note to the court that any regarding the knowingly divulging information or the specific intent, that that could be established through circumstantial evidence that we are at the pleading stage and that there are sufficient allegations in the complaint for that. So unless the court has any questions, I will reserve the rest of my time. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to  Welcome back. If it may please the court, Michael McCaul, I represent the Bayou Moune Medical Center in this appeal. Your honors, I think the district court's opinion on standing should be addressed first. I think if there's not sufficient standing, then you don't reach the CAFA and the SCA issues. What the district court properly found is that in this case, there was not a concrete injury traceable to these defendants. That the nature of the allegations put forth in the complaint were too attenuated from a temporal connection to show that it was linked to the ransomware event and that there was a concrete harm that could be traced to that. Specifically, if you look at the affidavit that was done and the allegations in the second amendment complaint that tracked that, it has none of the information really that Webb relied on to do. Webb found a temporal connection approximately a year from the data event and the filing of a fraudulent tax return. It specifically alleged in Webb that a social security number was used to open that. There's also particular allegations in Webb talking about how the plaintiff there protected their PII. None of those are here. The affidavit really is designed not to give information. It doesn't say when the plaintiff discovered the account had been opened. It doesn't say when the account was opened. It doesn't give the name of the provider that opened. It doesn't show that she actually had any concrete injury from the opening of that, that the unknown cell phone company charged her. She does say that she spent time responding to the data breach relatively close in time to when the data breach happened. Why wouldn't that be sufficient injury to show my understanding? My understanding is that the case law generally says that it's not enough to do monitoring service if there's not a concrete injury to do that, that you can't create jurisdiction just because you do that. The argument to go back here, the injury that she said is that this account was opened. She doesn't say that she had damages specifically from that cell phone provider. We cite cases in our brief talking about where courts have rejected jurisdiction where there's not actually showing that they actually had to pay for that, that there was injury there. If there's not anything that she had to pay to the cell phone provider, then you're really the same in the line of cases paying for monitoring, but without that. Specifically, the allegation in the ... is that at some time after the data breach notice, and the data breach notice was in July of 2019, that she discovered this account had been opened. The way it's drafted, it could be up to four years and nine months from the time of the on April 18th. That statement, when does that make it into the complaint? Is that in the first complaint? It's not in the first complaint. This is what I think is a little interesting because the original complaint was the subject of a motion that's missed for lack of standing. They got leave and they amended the complaint. One of the two proposed class members at that point, the original name plaintiff, Minerva Hernandez-Ompieri, they did beef up the First Amendment complaint and they put forward some facts regarding her. Specifically, they mentioned that right after she got the notice, she started getting these strange calls that she had fees on her, atayache, that were not ... that she had paid for. There's specific allegations and it has a temporal. She says that an account was opened and she gives the name of that. That arguably, it seems to me, tried to put some of the facts that Webb thought were sufficient in showing a close temporal occurrence. There were no facts added as to Ms. Santos in the First Amendment complaint. The First Amendment complaint was filed on September 28th of 2023. Since the ransomware event was May 21st of ... that's four years, several months, like four almost months after that. Presumably, since we had been attacking the lack of standing from the very beginning of the case, if she had facts at that point, she would have put them in the complaint at that point. The Ashcroft Standard says that you have to use your common sense in determining whether there's a plausible ... and it's not enough that there may theoretically be one or that it could be possible. You have to show that it's plausible. Our argument is that this is so amorphous ... the facts that were in her control, if this was close in time, she would have had every reason to put it in the affidavit. The fact that she didn't and doesn't plead in the complaint ... and that at some point, while Webb found that approximately a year was sufficient, it's not an open-ended thing. The thing in their brief says, essentially, there's temporal proximity because it's after they got notice. That could be after the notice from eternity. The notice was July 19th of 2019. There's no limit on that. In other areas of the law, temporal proximity to make inferences have to be sufficiently close in time. Under the Title VII context, sometimes there's case law saying, if it's more than two or three months, you can't make the inference. Our argument is that, at this point, something that's almost five years later, you can't show that it, in fact, is traceable to this ransomware event. The difference here in some of the other cases is that the notice that we gave ... and the notice in July 2019 does say the date of the event. It says it was May 21 in 2019. If you look at the appendix on page ... I'm sorry, 286. It's got the date of that. The date of the breach and the date of the discovery. It's got the date of the ransomware event was May 21 of 2019. The notice was done about ... It's our position that there's no indication. Ransomware cases are different from hacking to take data. The notice itself said that there's no evidence that there was exfiltration of any of this data from the hospital computers to the outside world. Essentially, it was frozen. They had to pay a ransom to get it back. In a related ransomware case, the District of Massachusetts, the same analogy that's in this complaint, that you can't freeze it without having access to it, was rejected as just being speculative in another ransomware case. That's our understanding here as well. There's not a showing that the PII actually was transferred. It was frozen and the hospital for a period of time couldn't access it until the ransom was paid. Our position is that it was not in fact transferred. If you're in the Ashcroft common sense, the only plaintiff that really put particularized allegations in the complaint wasn't even in the hospital, had never received services at the time of the data event. You should look with a little skepticism on these allegations in light of that, that they made these particularized allegations that couldn't have been traceable to the defendant because she had never received services in the hospital at the time of the data event in question. We understand that there was an order in this case setting the time for amendment of the completings to be January 2nd of 2024, that notwithstanding that they sought leave and even that we were going to oppose the leave to amend, the judge granted it without allowing us to oppose it. We sought reconsideration. It was denied. At this point, at some point, they've had three chances to do a complaint that states a cause of action. If there's supposedly 500,000 people in five years, we're now six years from that, they've come forward with one plaintiff and the only allegations, and we understand under the case law the allegations are so amorphous and attenuated as to the temporality of when it occurred that it does not state a concrete injury in fact. And to go to the, if I could, to go to the SCA issue, if you have more questions, a lot of what was argued by sister counsel here and has argued in the reply was not in the opening brief. In the opening brief on the SCA, there is not a single case cited under the Stored Communications Act. There's only one section of the statute, the statutory provision that she was just alluding to about electronic, was not briefed at all in the opening brief, and we understand that they shouldn't have been allowed in at the reply stage to come up with these new arguments to try to, when they didn't give us a chance to address them in our opposition brief. We understand that under the SCA, the magistrate properly found that they couldn't state a clause of action because there's a specific term of art that it has to be knowing or intentional and cases have found that it can't be reckless, that reckless or negligence, essentially what their argument seems to be is that the hospital was negligent in not having the standards up to what should have been the state of the art security standards. That's their allegation. That is not sufficient in the case law to show that they knowingly divulge PII. Even if arguably that was true, which hasn't been established, that is not enough the state of cause of action under the PII, and the fact that they didn't put forward a single case talking about what knowing what the standard is in the original brief, you shouldn't reach it. I mean, they throw out willful blindness, that's not in the complaint. They don't cite any case for that. So we understand then that there is insufficient, that you've got to, that the magistrate properly got right the issue on standing. They raise an issue regarding entitlement to jurisdictional discovery. If you look at Ash Cross v. Iqbal, it specifically says at page 566, 686, if you do not state a complaint under Rule 8, you do not have the right to discovery. Discovery matters are generally discretionary at the trial court level. In this case, the local Rule 26 of the local civil rules for the U.S. District Court says that any discovery motion to be made, the parties have to confer ahead of time, and the motion has to include a certification that you conferred and you weren't able to resolve it. There's plenty of good reasons to have that in place. Many issues are routinely resolved at the table and never have to go to the court. Now, in this case, they complain of the answers to the discovery request. They had almost four months to raise this issue. The requests that they allude to were answered in June 6 of 2025. The case was not dismissed until September 30th of 2025. At no point in that case did they ever attempt to confer with us to clarify what were the basis of the objections. In a lot of the objections, specifically, there were definitions in the discovery request that assumed that PII had been transferred, which is a critical issue that we're contesting in that this was a ransomware and that there's no evidence that any of this PII ever left the system of the hospital. And so, to answer that without objecting to that, we would essentially be conceding that it's a critical issue of this. In the ransomware cases, we understand are different. The standard has got to be, you know, the pleading standard, they've done a higher standard of doing it. We understand it's not met here. I don't know if you have any other particular questions of me that I could ask you to answer. Thank you, Counsel. All right. Mr. Bodom. Please reintroduce yourself on the record to begin. Yesenia Martinez, Counsel for Plaintiff Appellant. So, first, Your Honors, I would like to correct statements by further counsel. So first, counsel stated that plaintiff had not alleged allegations regarding the specific type of information that was included in the data breach, whether that was protected. That is, in fact, allegations that are made in the record. That is on paragraphs 9 and 126 of the Second Amendment complaint. And in addition, to clarify Judge Thompson's question asked to counsel as to what is stated in the data breach and whether that was the discovery date or the date of the data breach. The data breach notice says on May 21st, 2019, we obtained knowledge that your information was involved. Not that that was the first date on which the data breach occurred. This was the discovery date. So it is. This is a different question, but does the complaint state what type of information was used to open the fraudulent cell phone account? The complaint states that the information, plaintiff provided the private information including her name, address, financial information, and Social Security numbers. She alleges that that information, she is confidential and is sensitive to her. And based on the information, she found that a fraudulent cell phone account was opened in her name. There's no specific allegation that her Social Security number was used for the account, but such an allegation can be made upon amendment. These are, any deficiencies can, these deficiencies can be cured upon amendment, if allowed upon remand. There is... So this would be your third amendment or your fourth? This would be the third amendment, or this would be a third amended complaint, not the second amended complaint. But this would be the first time that the plaintiff would be permitted to address any deficiencies found from the district court as to the sufficiency of the allegations. There was a prior motion for judgment on the pleadings and a motion to dismiss, but the court did not rule on that to allow for re-pleading. Plaintiff did file a motion for leave to amend to address the actual fraud that she discovered between the first amended complaint and the second amended complaint, but that was not to address any deficiencies noted by the district court. Second, I would like to address the allegation from, or the argument from the medical center regarding knowingly divulging information. As I mentioned, the Supreme Court does not, at this point in time, specific intent need not be conclusively established. The parties don't have, the parties have an undeveloped factual record. Specific intent, no defendant is going to say, yes, hold me liable, I did this intentionally and knowingly. But what we have is circumstantial evidence of the awareness, the knowledge that the medical center has about the industry norms, about its deficient IT systems. The medical center made a choice to not protect this information, and it is that choice knowing that the data breach, or any kind of data breach, was reasonably likely to occur. It was not a question of if, it's a question of when, and all we ask is for the court to allow plaintiff and class members to seek relief, to have this case be heard on the merits, so that they can get relief for the data breach. Thank you, your honors. Thank you.